WHILDEN & CO. v. PEARCE.

1. Exceptions should state specifically the errors complained of.
2. Findings of fact by master and Circuit Judge approved.
3. Defendant mortgaged land and chattels to secure advances not to exceed $3,000, and the mortgage stipulated that the mortgagees should have "a lien on all crude turpentine, rosin, and spirits of turpentine to be made or controlled by" the mortgagor during the year; and the mortgagor further covenanted that he would ship all his naval stores to the mortgagees to be sold by them on commission, the proceeds of sales to be applied to the payment of advances made by the mortgagees. *Held,* that the naval stores were not mortgaged, there being no words of conveyance as to them, nor was this instrument an agricultural lien.
4. The mortgagor having shipped naval stores to the mortgagees without any direction as to the application of payment, the mortgagees had the right to apply the proceeds of sale to advances made by them in excess of the $3,000 secured by the mortgage.

Before FRASER, J., Kershaw, February, 1886.

The opinion sufficiently states the case.

*Mr. J. T. Hay,* for plaintiffs.

*Mr. W. D. Trantham,* contra.

June 28, 1887. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. In October, 1883, the defendant, Pearce, executed and delivered to the plaintiffs a mortgage of two tracts of land, a turpentine still and fixtures, and of certain horses and mules therein named, for and in consideration of advances to be made to him for the year 1884, to an amount not exceeding $3,000, to be paid on or before November 1, 1884, with interest at the rate of ten per cent. per annum from the date of said advances, to enable the said Pearce to carry on the business of farming and manufacturing naval stores in Sumter County. The mortgage also contained the following provision; "And I do further give to said W. W. Whilden & Co. a lien on all crude turpentine, rosin, and spirits of turpentine to be

made, manufactured, or controlled by me during the year 1884 ; and I do further covenant and agree to ship to said W. W. Whilden & Co. all naval stores to be manufactured or controlled by me during said year, the same to be sold by them on commission, according to the custom of merchants of Charleston, S. C. ; the net proceeds of said sales to be applied so far as the same may be necessary, to the payment of advances made to me by said W. W. Whilden & Co.," &c.

The plaintiffs advanced money and supplies so liberally, that on March 1, 1884, the defendant was indebted to them in the sum of $2,910, which, with interest, was about the amount specifically secured by the mortgage. The defendant, without any other instructions as to the application of the proceeds, forwarded some naval stores, which were sold by the plaintiffs, and they continued to make further advances, the monthly advances exceeding the receipts from the stores sent, until the latter part of October, when they refused to make further advances, and, applying the receipts from the stores to the unsecured advances in excess of the $3,000 covered by the mortgage, claimed that the defendant was indebted to them in the sum of $3,522.10, of which $3,275 was of the mortgage debt proper and interest, and the remainder, $247.10, was still a balance of the unsecured advances.

Thereupon the defendant notified the plaintiffs to come up and take charge of "the stock, still," &c., and, in accordance with this request, they sent one Chapman as their agent, to whom the defendant gave an instrument of writing as follows : "I, J. E. Pearce, do hereby deliver over to Messrs. W. W. Whilden & Co., all goods and chattels, personal property, and choses in action, included in my mortgage to them, &c., and hereby authorize and empower the said W. W. Whilden & Co., &c., to sell and dispose of all or any part of said personal property at public or private sale, and without advertisement." But Chapman, finding that all the property around the still and barrel timber in the woods had been attached as the property of the defendant, at the instance of one C. W. Humphreys, got actual possession only of the property included in the mortgage, viz., still, stock, and two wagons and harness. This property he sold at public auction by

an auctioneer, and credited the net proceeds of sale on the general account of the plaintiffs, who then instituted these proceedings to foreclose the mortgage on the two tracts of land, for the payment of the balance of the $3,000.

The defendant insisted that the whole of the proceeds of sale of the naval stores should be applied upon the note for $3,000 secured by the mortgage; and that under the paper purporting to deliver to the plaintiffs all the personal property included in the mortgage, they should be held responsible for certain barrels of rosin and "scrape" crude turpentine, lot of barrel timber in the woods, and also "the turpentine in one hundred thousand boxes," &c., and, these items of property being accounted for, he alleged "by way of defence that he had paid said mortgage debt in full," &c.

The issues were referred to the master, J. D. Dunlap, Esq., who took the testimony and stated the accounts. He held, that the naval stores having been forwarded without special instructions, the plaintiffs had the right to apply the proceeds of sale to the unsecured advances made in excess of the mortgage debt; but that the proceeds of the personal property, still, stock, &c., regularly covered by the mortgage and received and sold by the agent of the plaintiffs for $340.73, should be credited on the mortgage debt proper for $3,000, reducing the amount of the same to $2,646.54 on August 14, 1885, for which the mortgage should be foreclosed on the lands. He held also that the plaintiffs, never having had actual possession of the crude turpentine on the yard, "stuff in the woods," &c., were not responsible for the value thereof. Upon exceptions to this report, the cause was heard by Judge Fraser, who concurred with the master in all respects, except in reference to the application of the proceeds of the sale of the naval stores sold by the plaintiffs, as to which he directed that they also should be credited on the note for $3,000 specifically secured by the mortgage, leaving the advances in excess of that sum unsecured. From this decree both parties appeal to this court.

Exception of Plaintiffs.—"That his honor erred in adjudging that the proceeds of all shipments made by the defendant to plaintiffs should be credited to the account of $3,000 and interest;

instead of holding and deciding that the plaintiffs had the right to apply the payments as they have done."

Defendant's Exceptions.—"I. Because his honor erred in that he held that the plaintiffs did not take into their possession and were responsible for all of the property that was covered by his lien and mortgage, which was in existence on November 1, 1884, at which time the defendant turned over all of said property to W. H. Chapman, as the agent of the plaintiffs. II. Because his honor erred in that he held that the plaintiffs were not responsible for the value of the 'crude turpentine and the stuff in the woods;' and that such value should not be entered as a credit against any balance that may be due the plaintiffs by the defendant," &c.

As to the exceptions of the defendant, we agree with the Circuit Judge, that "they are not sufficiently definite as to the property referred to by them.   On an examination of the report and the testimony in the case, I do not see sufficient evidence that there was any property covered by the mortgage and the written agreement to take possession and sell without advertisement, which the plaintiffs either did not sell and properly account for, or which they made themselves liable for by neglecting to take possession of and sell and account for.   There is no evidence that plaintiffs ever agreed to carry on the operations of the turpentine farm," &c.   Besides, in regard to the articles of property which were not in existence at the time the mortgage was executed, but as to which the defendant simply declared a lien, and covenanted to ship to the plaintiffs during the year, we will speak hereafter.

The most important question in the case is, whether the plaintiffs were bound by law to apply the proceeds of all the naval stores sold by them during the year to the mortgage debt proper for $3,000, and thus cancelling the same, to leave the advances made in excess of that amount entirely unsecured.   There can be no reasonable doubt that the debt is due to the plaintiffs, but the precise point is whether the plaintiffs, having a mortgage for $3,000, were bound to apply the proceeds of the naval stores to that part of their debt which was already secured, leaving the advances in excess of that sum unsecured.   It is well settled that

if a creditor has more claims than one against the same debtor, who makes a payment without at the time directing to which debt it shall be applied, the creditor himself may make the application. When these naval stores were forwarded, no special directions were given as to the application of the proceeds of sale, and if this were all, there could not be a doubt about it.

But it is urged that mortgaged property must be applied to the mortgage debt, and that these "stores" were embraced in the mortgage as additional collateral security for the $3,000, and the proceeds of the sale should therefore have been applied exclusively to that debt. Were these stores legally mortgaged to the plaintiffs? It is true that they were referred to in the mortgage deed, and it would have been easy to have added them to the list of other personal property which was mortgaged to secure the $3,000; but with seeming purpose, they were not so included. These stores were not then in existence, and in reference to them the defendant did not attempt to convey any interest or estate present or in the future, but simply declared a lien and covenanted to ship to the plaintiffs "all crude turpentine, rosin, and spirits of turpentine to be made, manufactured, or controlled by me during the year 1884." We cannot say that this constituted such a legal mortgage of the articles to come into existence in the future as to authorize the plaintiffs to seize and appropriate the same. "Words denoting conveyance or transfer are essential." See *Green* v. *Jacobs*, 5 *S. C.*, 283; *Jones on Chattel Mortgages*, sections 8, 12, and 18, and authorities.

Nor do we think that the stipulation in the mortgage deed can be considered as an agricultural lien. That law, as it declares, was manifestly intended to favor and encourage the cultivation of the soil, and the court cannot extend its provisions so as to cover by analogy a case like this. Besides, if this could be considered as substantially an agricultural lien, the requirements of that law were not complied with. See *Cureton* v. *Gilmore*, 3 *S. C.*, 47; *Sternberger* v. *McSween*, 14 *Id.*, 35; *Kennedy* v. *Reames*, 15 *Id.*, 552.

But if there was no regular mortgage or agricultural lien covering and controlling the "naval stores," they were certainly mentioned in the mortgage deed, and it is insisted that such men-

tion itself in that deed was an implied direction that the proceeds of sale should be applied only to the $3,000 *covered and secured by that mortgage.* The defendant at that time could have so directed, but did he do so? The words are, "to be sold by them (plaintiffs) on commissions, &c.; *the net proceeds of said sales to be applied, so far as the same may be necessary, to the payment of advances made to me by said W. W. Whilden & Co.*" It will be observed that the words are not "to the *aforesaid advances*" (meaning the $3,000 secured by the mortgage deed), but general, "*to the advances made to me by the said W. W. Whilden & Co.*"

We cannot think that these general words should be absolutely controlled and limited by the statement in the mortgage that the advances were "not to exceed the sum of $3,000." The fact is, that the advances were not so limited; other and further advances were made, and the proceeds of the naval stores were applied to such advances, and it seems to us that such application was in compliance with the express terms of the stipulation contained in the mortgage deed. It certainly was not in violation of the words used, and, as we conceive, was in accordance with the *intention* of the parties. After the full amount of $3,-000 had been already advanced—filling the mortgage security to overflowing—the plaintiffs were under no obligation to advance further; and it is not to be lightly assumed that the defendant could have accepted or the plaintiffs would have continued to make additional advances, if the proceeds of the naval stores then being forwarded were to be applied in payment of the mortgage debt proper, leaving the advances then being made entirely unsecured. It seems to us unreasonable to suppose that the parties could have so understood it.

The judgment of this court is, that the judgment of the Circuit Court be so modified as to credit the proceeds of the "naval stores" upon the advances in excess of the $3,000 secured by the mortgage; and that in all other respects it be affirmed.