13380

RHAME v. JACKSON ET AL.

(163 S. E., 724)

Messrs. W. D. Bennett and Lide & Felder, for appellants,

*Mr. M. E. Zeigler*, for respondent,

April 7, 1932.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

The respondent is a merchant and the appellants are farmers. In 1930, arrangements were made by which the respondent agreed to advance the appellants agricultural supplies in the sum of $1,000.00; and the appellants gave the respondent a chattel mortgage over certain crops to secure the payment of the mortgage debt.

After they had obtained supplies amounting in value to $1,000.00, the appellants needed further advances, and, at their instance, the respondent continued furnishing them, but no new paper to secure the payment of the additional advances was taken. The respondent claims—and the claim is not denied by the appellants—that there was an agreement that the crops of the appellants were to be applied first to the payment of the unsecured debt and then to the mortgage debt.

In all, the respondent advanced supplies to the amount of $1,849.56. From proceeds of some of the mortgaged crops, he was paid by appellants $1,298.50. *As the payments were made, the respondent applied them to the unsecured debt until it was paid in full. He established by his own testimony, and that of other witnesses, in the trial, that, when payments were made, the appellants authorized him to apply them first to the unsecured debt. There was no denial by appellants of the truth of this testimony.* According to the accounts of the respondent, unquestioned by the appellants, there was a balance due by the latter to the former of $551.06.

The respondent contended that the balance was due on the chattel mortgage, and demanded that remaining crops of the appellants described in the mortgage be applied to the payment of that debt. The appellants took the position that the mortgage debt had been paid by delivery of sufficient mortgaged crops, and the balance due the respondent was on an open unsecured account. The respective contentions brought on this litigation, a claim and delivery action on the part of the respondent to recover the possession of the balance of the crops, under the mortgage held by him.

In the trial of the case, in the County Court of Orangeburg County, before his Honor, County Judge B. H. Moss, and a jury, the verdict and judgment were in favor of the respondent for the full amount sued for, such verdict and judgment being in the usual claim and delivery form.

The appellants offered no evidence. They moved for a nonsuit and also for a directed verdict, both of which were refused. They requested certain instructions to the jury, which the Court modified. In the several ways mentioned, they maintained a certain legal position, upon which they based their claim to a decision of the Court in their favor.

While there are four exceptions in the appeal to this Court, it is practically conceded, in the very clear argument of appellants' counsel, that there is but one real issue for our determination—the same legal proposition advanced, without success, in the lower Court. The position of the appellants is disclosed by the following request to charge: "I charge you that 'when property is covered by a lien, and the property itself, or the proceeds arising therefrom are received by the party holding the lien, the law makes the application.' "

The request, as submitted, was given, but in connection therewith, and in other parts of his general charge, the trial Judge also instructed the jury to the following effect: *If the mortgagors (appellants) and mortgagee (respondent) agreed that the crops, or their proceeds, be applied to the*

*unsecured debt, then the mortgagee did not have to apply
them to the mortgage debt.*

In our discussion of the issue for our determination, let it
be clearly understood that there is not here involved any
claim or right of a *third party,* such as a junior or subse-
quent mortgagee, or other creditor of the appellants, the
litigation concerns only the legal rights of the original
parties, the mortgagors and mortgagee.

The law, as declared by the Court, questioned here
by the appellants, was, in our opinion, a correct an-
nouncement of the principles applicable to the facts
of the cause, as disclosed in the evidence. It is in accord with
the rule declared generally, as is shown in the quotations we
take from well-recognized authorities on the subject of
"Payment," the emphasis placed being ours:

"Another exception to the rule that the creditor has the
right to apply the payment obtains when the money with
which the payment is made is known to the creditor to have
been derived from a particular source or fund, in which case
he cannot, *without the consent of the debtor,* apply it other-
wise than to the exoneration of the source or fund from
which it was derived." 30 Cyc., 1237.

"An example of a payment from a source known to the
creditor exists in the case of proceeds from the sale by the
mortgagee of property mortgaged or pledged to secure a
certain indebtedness, the rule requiring the creditor to ap-
ply the proceeds in payment of such indebtedness, *unless the
debtor consents to its application to another debt."* 48 C. J.,
652.

"Another limitation put on the power of the creditor to
apply payments is that where money is derived from a par-
ticular source or fund it must be applied to the relief of the
source or fund from which it was derived. Hence when
money is derived from a foreclosure sale of property given
to secure the payment of a particular debt it must be applied
in extinguishment of that claim without any direction from

the debtor. *However, a mortgagor, if he sees proper, may consent to adopt or ratify an unauthorized application of payment made by his mortgagee creditor of the proceeds of mortgaged property to an unsecured debt.* Whether the mortgagor has consented to either is a question of fact to be determined by the jury, and the burden is on the mortgagee, in either case, reasonably to satisfy the jury of such consent or ratification." 21 R. C. L., 97.

To sustain their view of the law, the appellants depend mainly upon the decision of the Court in *McSween v. Windham,* 104 S. C., 508, 89 S. E., 500, 503, and in connection therewith they also cite the following cases: *Hunter v. Wardlaw,* 6 S. C., 74; *Whilden v. Pearce,* 27 S. C., 44, 2 S. E., 709; *Ellis v. Mason,* 32 S. C., 277, 10 S. E., 1069; *Montague v. Stelts,* 37 S. C., 200, 15 S. E., 968, 972, 34 Am. St. Rep., 736; *Summer v. Kelly,* 38 S. C., 507, 17 S. E., 364, 365; *Barfield v. Coker,* 73 S. C., 181, 53 S. E., 170, 173.

A hasty reading of the reports of those cases, and particularly some of them, may give at first the impression that the trial Judge committed error in modifying the request to charge of the appellants. It is clear to us, however, that none of the cited cases are in opposition to the law as declared by the lower Court, when the determinations of this Court are read with a full understanding of the facts of the decided cases.

In the *Hunter case,* the creditor held against his debtor an agricultural lien and a mortgage of personal property to secure advances to the extent of $175.00. His debtor was also due him an open account. The total obligations amounted to $241.52. From the sales of the crop and of the personal property included in the mortgage, the debtor paid the creditor $192.25. This Court held there had been full payment of the lien debts. The opinion of the Court did not so state, but the report shows the debtor "gave no direction as to the application of the money."

The *Whilden case* clearly does not support the position of the appellants, and we think it really has little bearing upon the question here raised. There the defendant mortgaged land and chattels to secure advances not to exceed $3,000.00. The mortgagor further covenanted with the mortgagees that he would ship them all his naval stores on commission, the proceeds of sale to be applied to the payment of advances made by the mortgagees. At the conclusion of the transactions, the mortgagor was indebted to the mortgagees in the sum of $3,522.10, of which $3,275.00 was on the mortgage debt, and $247.10 on other advances. The suit was one to foreclose the mortgage on the land. The mortgagor insisted that the naval stores were covered by the mortgage, and the proceeds of their sale should have been applied to the mortgage debt, and not to the other account, as they were applied. The Circuit Court agreed with that position. This Court reversed that holding on the ground that the written instrument executed by the mortgagor, so far as the naval stores were concerned, was not a lien, and that the mortgagees had the right to apply the proceeds of the sale of the naval stores to the unsecured debt, since the mortgagor had not directed application to the mortgage debt. It is true the Court indicated that, if the naval stores had been embraced in the mortgage, the proceeds of their sale should have been applied to the mortgage debt. But we find nothing in the decision as to what the effect would have been if the mortgagor had expressly consented to the application of the proceeds of sale if the naval stores had been covered by the mortgage.

In *Ellis v. Mason, supra,* the holding of the Court, as shown by the syllabus, was this: "If goods shipped by mortgagor to mortgagee *without direction as to application are covered by the mortgage,* or, not being covered by the mortgage, are directed to be applied to the mortgage debt, the proceeds of their sale must be applied to the debt secured by the mortgage." (Italics added.)

That case, like Whilden's, concerned naval stores, and it was distinguished from the former in the opinion of the

Court. In the *Ellis case,* the naval stores "were unquestionably covered by the mortgage," the Court said. The defendant, the mortgagor, testified that the articles were shipped on account of the mortgage debt. There seems to have been no evidence showing that the mortgagees had the consent of the mortgagor to apply the proceeds received from certain naval stores shipped to them by the mortgagor to another debt of the mortgagor to the mortgagees. The Court very properly held that the proceeds of the naval stores, under the circumstances, should have been applied to the mortgage debt.

In the *Montague case,* the Court conceded the correctness of the rule that "a creditor holding a mortgage on property to secure the payment of his debt is bound to apply the proceeds of the sale of the mortgaged property to the mortgage debt, without any directions to that effect from his debtor. * * *" It does not appear, however, that the Court considered in that case what would have been the effect if the mortgagor had consented to an application of the proceeds of sale of the mortgaged property to a debt other than the mortgage debt.

Certain language of Mr. Justice Pope in *Summer v. Kelly, supra,* does of itself, as it appears in the opinion, support strongly the position of the appellants. We quote what was said: "This Court has never failed to hold that the proceeds of mortgaged property, whether such sale is made by mortgagor or mortgagee, when such proceeds reach the hands of the mortgagee, must be applied by him to the satisfaction, in whole or in part, according to the amount of the payment, of the debt or liability secured by the mortgage."

As authority for his announcement, the distinguished jurist cited the *Whilden* and *Ellis cases, supra,* which we have already considered, and it is unnecessary to refer again to their holdings. He also cited *Thatcher v. Massey,* 20 S. C., 542 (not cited by the appellants).

In the *Thatcher case,* a debtor, to secure advances to the extent of $2,000.00, executed a mortgage of land and an

agricultural lien on crops. His creditor made advances in excess of the agreed amount, secured as stated. The cotton crop covered by the agricultural lien was shipped to the creditor *without direction on the part of the debtor as to its application*. The Court held that the proceeds of the cotton were applicable to the secured indebtedness, and the creditor could not apply it to his unsecured claims. Clearly the holding of the Court was to the effect that the agricultural lien, in writing, was itself, *in the absence of any other instructions,* a direction to the lienholder to apply the cotton, or its proceeds, to the lien debt. The Court did not hold the creditor could not apply the proceeds of the cotton to his unsecured debt *if the debtor had so directed.*

On account of the very plain language of Mr. Justice Pope in the *Summer case,* we have read carefully his whole opinion, and have paid particular attention to the facts of the cause as he recounted them. In his summary of the report of the special referee, who first passed upon the issues in the cause, he said the referee held *"that there was no agreement between the parties as to application of payments."* We must not forget that clear statement of fact when we consider the legal principle declared in our quotation from the opinion. That excellent reporter of this Court, Honorable R. W. Shand, understood the holding in the *Summer case,* as declared by Mr. Justice Pope, just we understand it, for, in the syllabus prepared by him as to the principle stated, he used this concise language: "Whenever the proceeds of sale of property covered by a chattel mortgage reach the hands of the mortgagee, *in the absence of direction from mortgagor as to the application,* they must be credited on the mortgage debt." We have emphasized the words of the reporter to which especial attention is directed.

In *Barfield v. Coker, supra,* the Court passed upon the proper application of the proceeds of sale of property subject to an agricultural lien. It was said in the opinion of Mr. Justice Jones: "It is the duty of the lienor [lienee?] to pay such proceeds to the extinguishment of the lien debt, and

reciprocally it must be the duty of the lienee [lienor?] to so apply such payments. * * * The law compels this application, whether the creditor has knowledge or not that the payments were the proceeds of the sale of property under lien."

After a careful examination of the facts of that case, as disclosed in the opinion, we do not find that there was considered by the Court the right of the lienor (the holder of the lien) to apply the proceeds derived from the property covered by the lien to any debt other than the lien debt, if the lienee (the giver of the lien) consented to such application.

The request to charge of the appellants, earlier quoted in full, was taken from *McSween v. Windham, supra.* Mr. Chief Justice Gary, for this Court, did there say: "When property is covered by a lien, and the property itself, or the proceeds arising therefrom, are received by the party holding the lien, the law makes the application." After citing several cases, all of which we have heretofore discussed, the learned Chief Justice quoted the language of Mr. Justice Pope, also quoted by us, in *Summer v. Kelly, supra.*

In *McSween's case,* the Court construed a written instrument from the debtor to the creditor, whereby the debtor placed the creditor in possession of a certain tract of land, which was to be held by the creditor "for his [creditor's] own use and behoof until the rents and profits thereof [after deducting of all expenses] have paid in full said mortgage debt." The indebtedness stated in the instrument to be paid was $1,250.00. It turned out that the debtor had given two mortgages of real estate to his creditor, and the total amount of both of them aggregated $1,250.00. This Court decided that the proceeds arising from the rents and profits of the lands were applied by law to the two debts, and in proportion to the amounts due under the respective mortgages. There was no consideration by the Court of instructions on the part of the debtor to the creditor as to the payment of the debts, other than those contained in the instru-

ment from which we have quoted. Accordingly, the Court did not pass upon the question now before us for determination, just as it did not decide it in any one of the other cases we have reviewed.

In addition to the decisions of this Court, to which we have heretofore adverted, we have read many cases, not necessary to be discussed, for the purpose of ascertaining if any case in our reports upholds the position taken by the appellants. We have found no such case.

Expressions in the cases we have discussed, when they bear at all upon the subject, seem to us to indicate that the rule generally recognized should be followed by this Court, and our view is likewise. Many strong arguments occur to us to sustain its right and reason. We shall not prolong this opinion to state them, being satisfied to give only one, namely, that honesty and fair dealing between men usually demand that the goods and money of a debtor should be liable to the just claims of his creditor. The general rule we conceive to be this: *At the direction of the mortgage debtor, the mortgage creditor (the interest of no third party intervening) may, if he agree thereto, apply mortgaged property, or the proceeds of its sale, coming into the creditor's hands, to a debt of the debtor to the creditor other than the mortgage debt.* The holdings of the County Judge in the case at bar were in accord with that rule, and we approve them.

The judgment of this Court is that the judgment of the lower Court be, and the same is hereby, affirmed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.